**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MARIA C. MIKNIS,                                      :                          CIVIL ACTION
                Plaintiff                                      :
                                         :
        v.                                      :
                                         :
KILOLO KIJAKAZI,                                      :
Acting Commissioner of the                            :
Social Security Administration,                       :
                Defendant                                      :                          NO. 21-2217

<u>**MEMORANDUM**</u>

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                      December 21, 2022

      Maria C. Miknis ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the

Social Security Administration Commissioner's ("the Commissioner") final decision, denying her

claims for Disability Insurance Benefits ("DIB') under Title II of the Social Security Act, and for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Plaintiff filed

a brief supporting her request for review, the Commissioner responded to it, and Plaintiff filed a

reply.  For the reasons set forth below, Plaintiff's Request for Review will be granted, and the case

is remanded for further discussion of Plaintiff's non-compliance with prescribed treatment.

**I.        PROCEDURAL HISTORY**[1]

      On January 17, 2019, Plaintiff applied for DIB and SSI benefits, beginning January 1, 2013.

R. at 218.  The Social Security Administration ("SSA") denied Plaintiff's claims on April 18, 2019.

*Id.*  On January 27, 2020, Plaintiff appeared before Administrative Law Judge ("ALJ") Margaret

M. Gabell for an administrative hearing.  *Id.*  Plaintiff, unrepresented by an attorney, and vocational

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

expert Donna Nealon ("the VE") testified at the hearing.  *Id.* at 239-272.  On May 28, 2020, the

ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision.  *Id.* at

232.  The Appeals Council denied Plaintiff's request for review on March 16, 2021, making the

ALJ's findings the Commissioner's final determination.  *Id.* at 1-7.  Plaintiff sought judicial review

from the court on May 14, 2021.  Both parties consented to the undersigned's jurisdiction pursuant

to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    Plaintiff's Personal History

Plaintiff, born on January 19, 1985, R. at 231, was 35 years old when the ALJ rendered

her decision. R. at 231.  She resides with her mother and minor son.  *Id.* at 240.  Plaintiff has past

work experience as a direct care worker for adults, a custodian, a hostess, a prescription mail

---

[2]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1.  If claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2.  If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3.  If claimant is impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

> 5.  The Commissioner will determine whether, given claimant=s residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

packer, a pool attendant, a lifeguard, a dishwasher, and a cleaner.  *Id.* at 241-42, 244, 245-47.

She currently receives financial support from her father.  *Id.* at 240.

B.    Plaintiff's Testimony

At the January 27, 2020 administrative hearing, Plaintiff identified limitations that allegedly result from her mental impairments and prevent full-time employment.  She testified that bipolar disorder limited her ability to talk, hear, remember, complete tasks, understand, follow instructions, and get along with others.  *Id.* at 224.  Plaintiff testified that she is unable to work because of her frequent crying, for which she is receiving therapy.  *Id.* at 247.  Additional mental health impairments include anxiety, difficulty concentrating, limited verbal expression, depression, mood swings, sleep disorders, stress, and suicidal ideation.  Plaintiff takes Methadone to treat her prior heroin addiction; she testified that she has not used heroin in three years.  *Id.* at 248, 250.  She does, however, use marijuana, as needed, to control her anxiety and to assist with sleeping.[3]  *Id.* at 249.  Plaintiff testified that she is a Type II diabetic and suffers from asthma.  *Id.* at 260.

Plaintiff testified that she does not socialize with friends and can drive herself.  *Id.* at 256.

C.    Vocational Expert's Testimony

The VE classified Plaintiff's past home attendant position as a semi-skilled position,[4] generally performed at a medium[5] level of exertion.  R. at 262.  However, based on Plaintiff's file,

---

[3]  Plaintiff testified that she has a medical marijuana card.  R. at 250.

[4]  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks."  20 C.F.R. §§ 404.1568(b), 416.968(b).

[5]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

the VE characterized her past job's exertional level, as performed, as heavy.[6]  Plaintiff's past

position as housekeeping/cleaner was unskilled,[7] and although generally performed at a light[8] level

of exertion, was actually performed by her at the medium exertion level.  *Id.*  Her position as

host/hostess was characterized as semi-skilled at a light level of exertion.  *Id.*  Her YMCA lifeguard

position was semi-skilled, with medium exertion per the DOT, but heavy as performed.  *Id.* at 262.

The VE described Plaintiff's past positions as packager, dining room attendant, and kitchen helper

as unskilled, requiring medium exertion.  *Id.*

The ALJ asked the VE to consider an individual of Plaintiff's age, education level, and past

work experience who was restricted to medium work.  *Id.*  This individual, from a postural

standpoint, is limited to positions requiring:

> no climbing of ladders, ropes or scaffolds, no exposure to
> unprotected heights, the individual would need to avoid temperature
> extremes, would only be able to tolerate a moderate exposure to
> dust, odors, wetness, gases and fumes and poorly ventilated areas,
> the individual would be limited to unskilled work, jobs involving
> only simple, routine tasks, making simple decisions, tolerating only
> occasional changes in the workplace, occasional interaction with
> coworkers and supervisors, no direct public interaction.

---

[6]  "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[7]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).

[8]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

*Id.* at 262-63.  The VE responded that, although Plaintiff's prior positions would be eliminated, other jobs exist in the national economy such an individual could perform, including: (1) laundry laborer, 350,000 positions nationally; (2) sorter, 558,000 positions nationally; (3) inspector, packer, 664,000 positions nationally; and (4) hospital cleaner, 924,000 positions nationally.  *Id.* at 264.

Next, the ALJ inquired whether any jobs exist in the national economy if, along with the limitations outlined in the first hypothetical, that individual had any one of the following: frequent problems dealing with ordinary work stress, frequent problems interacting with coworkers and supervisors causing workplace disruption, was off-task 15-20% of the day due to frequent lapses in focusing and concentrating, regularly missed one workday per week, or had difficulty completing a normal work shift.  *Id.* at 264-54.  The VE opined that each of these additional limitations would be work-preclusive.  *Id.* at 264.

## II.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.  [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2018.

2.  [Plaintiff] has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  [Plaintiff] has the following severe impairments: bipolar disorder; post-traumatic stress disorder; attention-deficit disorder; substance abuse (in remission since 2016); asthma; and diabetes mellitus (20 CFR 404.1520(c) and 416.920 (c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can never climb ladders, ropes, or scaffolds; she may have no exposure to unprotected heights; she would need to avoid temperature extremes; and she would only be able to tolerate moderate exposure to dust, odors, wetness, gases, fumes, and poorly-ventilated areas.  [Plaintiff] is limited to unskilled work involving simple, routine tasks; making simple decisions; tolerating only occasional changes in the workplace; occasional interaction with coworkers and super[visors]; and no direct public interaction.

6. [Plaintiff] is capable of performing past relevant work as a Housekeeping Cleaner (Dictionary of Occupational Titles (DOT) 323.687-014, specific vocational preparation (SVP) 2, light exertional level as generally performed, medium exertional level as actually performed).  This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

R. at 221-32.


## IV.    DISCUSSION

A.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co.*

*v. NLRB*, 305 U.S. 197, 229)).   While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose [its] own factual determinations."  *Chandler*, 667 F.3d at 359.  *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that

the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.    Right to Counsel in Disability Proceedings

Though Plaintiff does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to counsel at such a hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. Plaintiff must be given notice of the right to counsel and can give up this right only by a knowing and intelligent waiver. *See, e.g.*, *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). Moreover, when a Plaintiff is *pro se*, the ALJ has a duty to help develop the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotations omitted). However, before the court will remand for failing to adequately inform Plaintiff of the right to counsel, a clear showing of prejudice or unfairness at the administrative hearing is required. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) ("[I]f it is clear that the lack of

counsel prejudiced [Plaintiff] or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal.").

When the ALJ fails to develop a complete record, a court may find the proceeding unfair. *Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1994) (citing *Livingston*, 614 F.2d at 345). "The essential inquiry is whether the incomplete record reveals evidentiary gaps which result in prejudice to [Plaintiff]." *Id.* (citation omitted).  "If the ALJ failed to fill these evidentiary gaps, 'good cause' for remand is established." *Id.* (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

D.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 221.  The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, she was capable of performing work in the national economy at the medium exertional level.  *Id.* at 223.

In her brief, Plaintiff argues that remand is warranted, because the appointment of former Commissioner Andrew Saul violates the separation of powers, rendering the ALJ's decision, based on her authority derived from Mr. Saul, constitutionally defective.  Pl.'s Br. at 4-6.  Plaintiff additionally argues that the ALJ failed to provide a full and fair hearing by adequately developing the record, erroneously found less than marked limitations in the domains of interacting with others and adapting or managing oneself, erred in her evaluation of the mental disorder listings, provided insufficient evidence to support her RFC finding, and should have considered new supportive evidence.  *Id.* at 7, 13, 19, 21.  This court rejects each of Plaintiff's arguments for the reasons that follow.

1. <u>The ALJ's Decision is Not Constitutionally Defective and Does Not Violate the
Separation of Powers</u>

Plaintiff argues that former Commissioner Saul's appointment by former President Trump

violated the federal constitution, because the statute creating the position made the

Commissioner's term of office longer than the Presidential term and required the President to have

cause to dismiss the Commissioner.  Pl.'s Br. at 4.  The Acting Commissioner concedes that the

statute is unconstitutional.  Def.'s Resp. at 5.  However, the parties disagree about whether Plaintiff

can obtain any relief based upon this admitted technical constitutional violation.  This court finds

that she cannot.

The Supreme Court has held that the federal constitution vests all executive power in the

President.  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020).  Since it

is impossible for one person to exercise all of that power solely, the Framers expected that the

President would appoint and rely upon subordinate officers.  *Id.*  In order for the President to be

accountable for the actions of the subordinate officers, the President must be able to dismiss any

such officers at will.  *Id.* (citation omitted).  The Court has only recognized two exceptions to this

rule: (1) agencies that groups of officers lead, and (2) inferior officers (not agency heads) having

narrowly defined duties.  *Id.* at 2192 (citations omitted).

The Commissioner, the sole head of the Social Security Administration, has a six-year term

of office and is removable only for neglect of duty or malfeasance in office.  42 U.S.C. § 902(a)(3).

As such, § 902(a)(3) violates the federal constitution because it restricts the President's ability to

remove the Commissioner.  *Seila Law*, 140 S. Ct. at 2191-92.  As stated previously, the Acting

Commissioner concedes this point.  Def.'s Resp. at 8.  Nevertheless, Plaintiff cannot obtain any

relief based upon this constitutional violation.

While § 902(a)(3) unconstitutionally restricted the President's authority to remove Commissioner Saul, the statute creates no defect in how Commissioner Saul was appointed. Hence, any actions Commissioner Saul took should not be regarded as void. *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Customarily, a defect in a removal provision does not prevent the agency head from appropriately exercising the duties of the office. *Id.* at 1788 n.24 (citing *Seila Law*, 140 S. Ct. at 2207-2211). In *Collins*, the Supreme Court gave examples of what might cause an exception to this general rule: (1) evidence that a court had prevented the President from removing an agency head, because the President did not have cause to remove the agency head; or (2) the President expressing public displeasure with the agency head and desiring removal of the agency head, but for the statute. *Id.* at 1789.

Plaintiff argues that the Commissioner's decision was invalid because it was based on a decision by an Appeals Council whose delegation of authority came from Commissioner Saul. Pl.'s Br. at 6. Furthermore, Plaintiff states that "the ALJ and Appeals Council decided this case under regulations promulgated by Mr. Saul when he had no constitutional authority to issue those rules." *Id.* She states that in addition to her denial of benefits, she was harmed because she was deprived of a "valid administrative adjudicatory process." *Id.* While § 902(a)(3) unconstitutionally restricted the President's authority to remove Commissioner Saul, the statute creates no defect in how Commissioner Saul was appointed. Hence, any actions Commissioner Saul took should not be regarded as void. *Collins*, 141 S. Ct. at 1787. Neither example of the exception to this rule applies herein. First, former President Trump expressed no dissatisfaction with former Commissioner Saul, whom he appointed. Furthermore, by the time President Biden took the oath of office on January 20, 2021, and, thereafter, expressed his dislike for certain actions taken by former Commissioner Saul, Plaintiff had already received an unfavorable decision on her

claim.  Thus, the agency action Plaintiff complains about – the ALJ's decision – occurred before any President expressed concern about former Commissioner Saul.  Hence, *Collins* dictates that Plaintiff cannot obtain relief.  *Id.*

2. The ALJ Provided Plaintiff with a Full and Fair Hearing that Adequately Developed the Record When Plaintiff Waived Her Right to Counsel and Proceeded with the Hearing

Plaintiff alleges that the ALJ did not provide Plaintiff with a "full and fair hearing" because her colloquy raised doubts as to whether Plaintiff knowingly waived her right to counsel, and that the colloquy itself did not comply with the Commissioner's internal guidelines as set forth in HALLEX I-2-6-52(B).  Pl.'s Br. at 7-13.  Furthermore, Plaintiff argues that, because the ALJ failed to adequately develop the record and thereby prejudiced Plaintiff, remand is required.  *Id.*  While the ALJ's colloquy lacked the completeness the Commissioner's rule provides for, we disagree that remand is required on this basis.[9]  The ALJ adequately developed the record, ensuring that Plaintiff's lack of counsel did not prejudice presentation of her case.

HALLEX I-2-6-52(B) states that the ALJ conducting the hearing must inform an unrepresented Plaintiff of "her right to obtain representation."  The ALJ must "explain the availability of both free legal services and contingency representation and discuss access to organizations that assist individuals in obtaining representation."  Examples of questions the ALJ may provide include had Plaintiff received the hearing acknowledgment letter and any enclosures, and whether she understood the information contained in the letter concerning representation.  *Id.*  The ALJ's colloquy here clearly did not encompass such inquiries or advisement.[10]  R. at 239.

---

[9] While these provisions are relevant, this circuit has suggested that these guidelines "lack the force of law and create no judicially-enforceable rights."  *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (non-precedential) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

[10] The ALJ's colloquy: "I do want to make you aware you have a right to have an attorney present with you during a hearing.  An attorney can help explain our rules and regulations, help prepare the testimony, cross-examine our vocational expert and also gather any necessary medical evidence I need to help evaluate your case.  If you want a

Nevertheless, the ALJ did conduct a full and fair hearing, thoroughly reviewing the medical evidence, and complying with her obligation[11] to take a "heightened level of care" in developing the record. *Reefer*, 326 F.3d at 379-80. Consequently, the record contains detailed information, consisting of numerous medical reports from Plaintiff's treating psychiatrists and therapists through September 2019, hospital records through November 2019, and an assessment from a state agency reviewing psychologist. R. at 277-91, 522-983. The ALJ then further developed the record through extensive questions directed to Plaintiff regarding her medical history and alleged complaints and symptoms. *Id.* at 240-72. Plaintiff's testimony herein involves the type of elicitation necessary to disclose her functional limitations. *Id.* at 247. The ALJ asked why Plaintiff felt she could not work. *Id.* In response, Plaintiff discussed her PTSD and therapy. *Id.* at 247-49. The ALJ elicited information pertaining to the following: Plaintiff's drug addiction and remission, R. at 250; diabetes and treatment, R. at 259-60; mental health symptoms, R. at 253-54; and the impact of her mental health on her daily functioning. R. at 257-59.

The ALJ's actions meet the threshold of a probing inquiry, as required by *Reefer*. 326 F.3d at 379-80. We need not determine whether counsel's presence at Plaintiff's administrative hearing would have added any specifically beneficial outcomes to her case. *Gauthney*, 890 F. Supp. at 411 (citations omitted). With all of the above details available to the ALJ, it is evident that there are no evidentiary gaps in the record; therefore, remand is unnecessary.

---

chance to get an attorney what I would do is postpone the hearing today. It will be rescheduled in about four or five months. When you come back if you don't have an attorney at that point in time, I will not reschedule it again. Knowing that information: would you like to proceed today without an attorney or would you like some time to try and find one?"
Plaintiff: "I'll proceed without." R. at 239.

[11] This court notes that there is no prescribed procedure for achieving this heightened level of care; rather the ALJ's efforts must simply be "not wholly inadequate under the circumstances." *Reefer*, 326 F.3d at 380.

3.   <u>Substantial Evidence Supports the ALJ's Evaluation of the Mental Disorders Listing</u>

Plaintiff asserts that the ALJ should have found that she met listings 12.04, 12.06, and 12.15 because she has "marked" limitations in the domains of interacting with others and adapting or managing oneself.  Pl.'s Br. at 13-23.  This court affirms the ALJ's step three finding, because substantial evidence supports the ALJ's evaluation of the mental disorder listings.

At step three of the sequential evaluation process, the ALJ considered Listings 12.04, 12.06, and 12.15, each of which have identical "paragraph B" criteria.  R. at 222.  See 20 C.F.R., Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06, 12.15.  In order to meet these "paragraph B" criteria, Plaintiff must prove that she has an extreme limitation in one area or a marked limitation in two areas of mental functioning; i.e.. ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*

The ALJ explained that she found Plaintiff had moderate limitations in the domains of interacting with others and adapting or managing oneself.  *Id.* at 222.  Regarding the domain of interacting with others, the ALJ noted that Plaintiff reported problems getting along with others, a history of belligerence with police, explosive irritability, and angry outbursts.  *Id.*  However, during an examination, Plaintiff was generally pleasant and cooperative, R. at 222, 641, 661, 674, 742, 756, 802, 805, 814, 849, and only occasionally became irritable and uncooperative.  R. at 222, 821, 884).  Additionally, the ALJ noted that Dr. Gibbing reported that Plaintiff was cooperative and responsive, made appropriate eye contact, and had adequate social skills.  R. at 222, 994-95.

In the domain of adapting and managing oneself, the ALJ noted Plaintiff's moderate limitation.  *Id.* at 223.  While Plaintiff reported an inability to manage her finances and that she handled stress and routine changes badly, she prepared her own meals daily, and was able to handle

14

her personal care, perform household chores, drive a car, go out alone, use public transportation, and shop in stores.  *Id.* at 222, 404-05, 408, 413, 995.  And, although Plaintiff occasionally exhibited a sad, depressed, and anxious mood with a constricted affect, her treatment providers noted that she generally appeared neat and clean and exhibited a full affect, a normal mood, and an appropriate appearance.  *Id.* at 222, 641, 663, 674, 756, 802, 805, 814.  Plaintiff suggests other evidence in the record to reach a different conclusion from the ALJ's.  Pl.'s Br. at 13-23.  However, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler,* 667 F.3d at 359.  Because substantial evidence supports the ALJ's finding of moderate limitations in the domains of interacting with others and adapting and managing oneself, this court must affirm.

    4.   <u>The ALJ Appropriately Evaluated the Record Evidence</u>

Plaintiff contends that the ALJ's mental RFC is unsupported by substantial evidence, because her conclusions rely on a selective evaluation of the record.  Pl.'s Br. at 23-26.  This court finds that the ALJ appropriately evaluated the record evidence.

The ALJ adequately discussed the negative examination findings in the record, contrary to Plaintiff's assertion.  She acknowledged Plaintiff's reported mental impairments, R. at 225, but referred to other treatment records to support her conclusion.  *Id.*  The ALJ addressed Plaintiff's history of mental health disorders and psychiatric hospitalizations, but noted Plaintiff's positive response to treatment with medication.  *Id.* at 225-27.  She considered Dr. Gibbing's March 11, 2020 consultative psychological evaluation report, which generally noted normal findings.  *Id.* at 227.  Because the ALJ's findings regarding Plaintiff's impairments were adequately supported by substantial record evidence, and this court cannot reweigh the evidence, this court will not disturb them by remanding on this basis.

5. The ALJ Did Not Adequately Consider Plaintiff's Non-Compliance with Medication in Her Evaluation of Plaintiff's Disability Claim

Plaintiff argues that the ALJ improperly relied upon Plaintiff's alleged non-compliance with her prescribed treatment, without considering the factors in 20 C.F.R. §§ 404.1530 and 416.930, and SSR 18-3p. This court finds the argument meritless.

Under the applicable regulations, in order for Plaintiff to receive benefits, she must follow the treatment prescribed by medical sources if this treatment is expected to restore her ability to work. *See* 20 C.F.R. §§ 404.1530(a), 416.930(a), SSR 18-3p, 2018 SSR LEXIS 1. If Plaintiff fails to follow the prescribed treatment without a good reason, the ALJ will find the individual not disabled. 20 C.F.R. §§ 404.1530(b), 416.930(b), 18-3p, 2018 SSR LEXIS 1. The ALJ will consider Plaintiff's physical, mental, educational, and linguistic limitations when determining if an acceptable reason for not following the prescribed treatment exists. 20 C.F.R. §§ 404.1530(c), 416.930(c).

The ALJ considered Plaintiff's non-compliance with medication and therapy, and found her subjective complaints inconsistent with the overall record evidence. R. at 228, 524, 528, 535, 588-97, 613. Plaintiff noted, in January 2019, that she felt her psychiatric symptoms were improving with her medication, and, in March 2019, she denied depression, severe mood swings, anxiety, or insomnia. *Id.* at 228. In June 2019, she described her mood as overall positive; she was not experiencing significant depression. *Id.* at 228-29. In March 2020, Dr. Gibbing found Plaintiff's speech to be "intelligent and fluent"; her thought processes to be "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia"; her mood to be self-described as "'pretty good' today"; her attention and concentration were "basically intact" as were her recent and remote memory skills; her cognitive functioning fell "within the average range"; and her insight was "fair." *Id.* at 993-94. In short, the most recent medical evidence suggests that her

16

ability to function is not seriously impaired in relevant work-related activities, despite her contrary subjective complaints. *Cf. Morales, v. Apfel*, 225 F.3d 310, 319-20 (3d Cir. 2000) (stating the ALJ erred in rejecting a medical opinion that plaintiff's functioning was seriously impaired or nonexistent in every work-related area).

It is Plaintiff's "burden of establishing that . . . she is incapable of performing her past relevant work due to a physical or mental impairment." *Id.* at 316 (citation omitted). While symptoms reasonably controlled by medication are not disabling, evidence of Plaintiff's stability and well-controlled medical symptoms does not necessarily establish her ability to return to work. *Morales*, 225 F.3d at 319; *Dearth v. Barnhart*, 34 F. App'x 874 (3d Cir. 2002) (citation omitted) (non-precedential). In fact, Social Security Ruling 16-3p cautions that the ALJ must not "find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons . . . she may not comply with treatment or seek treatment consistent with the degree of . . . her complaints." 2016 SSR LEXIS 4. Here, the ALJ should have, but failed to, adequately address whether Plaintiff's failure to continue with her medication and therapy regimen was due to her mental illness.[12] *See Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009) (expressing that "[c]ourts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medications"); *Gleason v. Colvin*, 152 F. Supp. 3d 364, 391 (E.D. Pa. 2015) (noting that "'federal

---

[12] As the Seventh Circuit has explained:

> [I]t is true that bipolar disorder is treatable by drugs. But mental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment . . . The administrative law judge did not consider this possibility.

*Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006).

courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse'" (quoting *Pate-Fires*, 564 F.3d at 945)); *see also Pounds v. Astrue*, 772 F. Supp. 2d 713, 723 n.21 (W.D. Pa. 2011) (explaining that "non-compliance is a hallmark of bipolar disorder . . ."). This court, therefore, finds that remand is warranted on this basis.

On remand, the ALJ should explicitly address Plaintiff's mental health, in particular her bipolar disorder, and its impact on her ability to comply with a prescribed medicinal and therapeutic regimen. Furthermore, the ALJ should consider whether or not any inability to maintain compliance impacts Plaintiff's ability to sustain regular employment.

6. The ALJ's Was Not Required to Consider Plaintiff's Newly Submitted Evidence

Plaintiff asserts that new evidence consisting of a supportive medical source statement dated August 25, 2020, from Dr. Maryam Bickell, D.O., mandates a 42 U.S.C. § 405(g) sentence six remand. Pl.'s Br. at 27. It does not.

In order to obtain a sentence six remand, the claimant must demonstrate that the evidence not presented to the ALJ is new and material, and that there is good cause for the failure to have presented the evidence to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 592-93 (3d Cir. 2001) (citing *Szubak v. Sect'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)). Evidence compiled after the ALJ's decision is new. *Szubak*, 745 F.2d at 833. Evidence is material if it creates the reasonable probability of a different outcome; this burden is not great, and the new evidence need not meet a preponderance test. *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985). To be material, the new evidence must relate to the time period for which benefits were denied; it cannot prove a later-acquired condition or the deterioration of a prior condition. *Szubak*, 745 F.2d at 833. Finally,

good cause exists when the records reveal that the claimant did not delay in presenting the "new" evidence to the ALJ.  *See Matthews*, 239 F.3d at 595; *Szubak*, 745 F.2d at 834.

Here, Plaintiff has failed to demonstrate good cause for her failure to submit the updated Lenape Valley treatment records and Dr. Bickell's Medical Source statement to the ALJ.  The treatment notes existed at the time of the ALJ's decision, hence, Plaintiff could have requested an opinion from Dr. Bickell prior to the ALJ's decision.  Because good cause does not excuse Plaintiff's failure to provide the evidence at issue in a timely manner, a sentence six remand is not warranted for this reason.

## V.    CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence does not support the ALJ's decision as regards Plaintiff's non-compliance with treatment. Accordingly, the Request for Review is granted.  An implementing Order and Order of Judgment follow.